SUPERIOR COURT 
 
 COMMONWEALTH v s. JUDY CHURCH

 
 Docket:
 2377CR0014
 
 
 Dates:
 March 14, 2025
 
 
 Present:
 Jeffrey T. Karp
 
 
 County:
 ESSEX
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION TO SUPPRESS OR EXCLUDE TESTIMONY AND EVIDENCE BASED ON DESTROYED EVIDENCE (Paper No. 49)
 
 

             Defendant Judy Church is charged with murder in connection with the alleged poisoning death of her partner with whom she resided. Ms. Church has moved to suppress the results of certain toxicology testing performed on behalf of the Commonwealth by an outside lab.[1]
            On February 26, 2025, the Court conducted an evidentiary hearing on Defendant’s Motion To Suppress Or Exclude Testimony And Evidence Based On Destroyed Evidence (Paper No. 49) (“Motion”). The Court heard testimony from Jessica Brown, a forensic analyst employed in the Trace, Arson, and Explosives Unit at the Massachusetts State Police (“MSP”) Crime Laboratory. The Court also received in evidence five exhibits, which were offered by Ms. Church, who did not testify.
            As is fully explained below, after thorough consideration of the parties’ submissions, arguments of counsel, and the evidence presented at the hearing, the
Motion is DENIED.
 
--------------------------------------------
 
[1] To be more precise, Ms. Church seeks to preclude evidence regarding the testing results at the trial of this matter.
 
                                                            -1-
 
FINDINGS OF FACT
            The Court makes the following findings, which are based on the credible evidence produced at the hearing and the reasonable inferences the Court has drawn from the evidence.[2]
            On November 14, 2022, police executed a search warrant at Ms. Church’s apartment located in Salisbury and seized, inter alia, a 16 oz. Powerade bottle containing approximately one ounce of orange liquid; a gallon container of Rain-X Heavy Duty
De-icer containing approximately one-third of a gallon of orange liquid; and, a can of orange soda containing an unspecified quantity of orange liquid.
            Sometime after the execution of the search warrant, the MSP Crime Lab (i.e., Ms. Brown) sent the following samples to NMS Labs, a private toxicology testing lab located in Pennsylvania: (a) a test tube containing 5 milliliters (mL) of the orange liquid found inside the Powerade bottle (“Powerade Sample”); (b) a test tube containing 5.75 mL of the orange liquid found inside the Rain-X container (“Rain-X Sample”); and, (c) a test tube containing 7 mL of the orange liquid found inside the orange soda can (“Soda Sample”) (collectively “Samples”). NMS Labs received the samples on December 30, 2022.
            During January 2023, NMS Labs conducted testing on the Samples for the presence of ethylene glycol, which the Commonwealth alleges was present in antifreeze that Ms. Church used to poison the alleged victim.
 
--------------------------------------------
 
[2] The Court sets forth additional findings of fact in the Conclusions of Law section, infra.
 
                                                            -2-
 
            On approximately January 13, 2023, NMS Labs sent the MSP a toxicology report regarding its testing of the Rain-X Sample, which showed that it contained 11 milligrams per deciliter (mg/dL) of ethylene glycol. See Ex. 2, NMS Toxicology Report.
The NMS Labs Toxicology Report contained the following statement (“Notice”):
Unless alternate arrangements are made by you, the remainder of the submitted specimens will be discarded one (1) year from the date of this report; and generated data will be discarded five (5) years from the date the analyses were performed.
Ex. 2, NMS Toxicology Report, p. 2.
            On approximately January 24, 2023, NMS Labs sent the MSP toxicology reports (Ex. 3 and 4) regarding its testing of the other Samples, which showed that the Powerade Sample contained 2400 mg/dL of ethylene glycol (Ex. 3) and that testing results could not be generated for the Soda Sample (Ex. 4). Both of the toxicology reports contained the Notice.
            The parties stipulated for purposes of the hearing that NMS Labs’ testing did not consume the Samples and approximately 1 mL of each of the Samples was left over after the testing.
            On July 16, 2024, Ms. Church’s successor counsel[3] filed Defendant’s Discovery Motion (Paper No. 21), wherein Ms. Church requested, inter alia, “[a]n opportunity to inspect and retest the fluid samples sent to NMS for testing.”
            On December 5, 2024, Ms. Church’s counsel sent emails to the Commonwealth stating that they “would still like to visually inspect” the Samples, requesting an opportunity to inspect the Samples, and expressing a belief that the Samples had been
 
--------------------------------------------
 
[3] Ms. Church’s current counsel filed their appearance in this matter on May 7, 2024, thus succeeding her initial counsel.
 
                                                            -3-
 
destroyed in accordance with the Notice. See Ex. 5. The Commonwealth replied on the same day and confirmed that NMS Labs had discarded the leftover contents of the Samples (i.e., the portions of the Samples that were not consumed during the testing). I d.
            The leftover portions of the Samples and whatever remained from the testing itself were destroyed by the NMS Labs on an unknown date in accordance with their sample retention policy described in the Notice.[4], [5]
            The MSP remains in possession of the Powerade bottle, the Rain-X container, and the orange soda can. Furthermore, more than a sufficient amount of the orange liquid that was found in each such container when collected at Ms. Church’s home remains, and can be tested for the presence of ethylene glycol and other substances.
            As best as the Court can tell, neither the MSP nor the Essex District Attorney’s Office had a system in place during the relevant time period to ensure that the leftover Samples would be retained by NMS Labs or retrieved by the MSP.
 
--------------------------------------------
 
[4] No evidence was presented regarding whether retesting could have been performed on whatever was left of the portions of the Samples that NMS Labs actually tested. For example, the toxicology testing methodology presently used by the MSP Crime Lab utilizes a solvent to isolate and extract the toxic compound during the testing. After the testing, the solvent containing the toxic compound is retained by the MSP Crime Lab so that retesting may be performed to check the accuracy of the toxicology results. Whether NMS Labs used a similar testing method on the Samples is unknown.
[5] No evidence was presented regarding when NMS Labs destroyed the leftover Samples. However, the Court assumes that, in accordance with the Notice, it was no earlier than one year from the dates of the toxicology reports it sent to the MSP, that being January 13, 2023, in the case of the leftover Rain-X Sample, and January 24, 2023, in the case of the leftover Powerade Sample and Soda Sample.
 
                                                            -4-
 
CONCLUSIONS OF LAW
            In the Motion, Ms. Church argues that the Commonwealth should be precluded from offering any evidence regarding the testing of the Samples at the trial of this matter because the destruction of the Samples violates her due process rights and Mass. R. Crim. P. 14.
I.          LEGAL FRAMEWORK WHEN DEFENDANT ALLEGES COMMONWEALTH DESTROYED EXCULPATORY EVIDENCE
            Generally speaking, a defendant’s due process rights may be violated when the Commonwealth fails to preserve exculpatory evidence. See e.g., Commonwealth v. Sanford, 460 Mass. 441, 446 (2011) (observing that defendant’s right to remedial action for Commonwealth’s loss or destruction of potentially exculpatory evidence stems from “defendant’s due process right to a fair trial”).
As is pertinent here, the SJC has stated that:
[T]here are two avenues by which to seek a remedy of suppression or exclusion on a claim that potentially exculpatory evidence has been lost or destroyed by the government. In the first, the defendant must demonstrate the exculpatory nature of the destroyed evidence, by establishing “a reasonable possibility, based on concrete evidence rather than a fertile imagination, that access to the [material] would have produced evidence favorable to his cause.” . . . If he meets this initial burden, but not otherwise, the court will proceed to balance the potential prejudice to the defendant . . . , the materiality of the evidence, and the culpability of the Commonwealth.
If a defendant is unable to meet this threshold burden, he “may be independently entitled to a remedy” of exclusion if the loss or destruction of evidence was due to the bad faith or reckless acts of the Commonwealth.
I d. at 447 (quotations and citations omitted).
            The Court will address both avenues in turn.
 
                                                            -5-
 
II.        MS. CHURCH HAS FAILED TO MEET HER INITIAL BURDEN UNDER THE FIRST WAY TO OBTAIN A REMEDY FOR THE COMMONWEALTH’S DESTRUCTION OF EVIDENCE
            Under the first way for seeking a remedy for the destruction of the Samples, Ms. Church “has the initial burden of establishing a reasonable possibility, based on concrete evidence and not on mere speculation, that the Commonwealth’s actions deprive[] h[er] of evidence that would have been favorable to h[er] case.” Commonwealth v. Olszewski, 416 Mass. 707, 714 (1993); see also Commonwealth v. Moore, 480 Mass. 799, 811 (2018) (same).
             Here, the Court has little difficulty ruling that Ms. Church has failed to meet this burden because it is nothing more than “mere speculation” that the destruction of the leftover portions of the Samples would have been favorable to her case. Ms. Church failed to present any evidence that testing of the leftover portions of the Samples was likely to show different results than those generated by NMS Labs.[6]
III.       THE COMMONWEALTH DID NOT ACT RECKLESSLY OR IN BAD FAITH IN FAILING TO PRESERVE THE EVIDENCE
            The second way for Ms. Church to seek a remedy for the destruction of the Samples is “if the loss or destruction of evidence was due to the bad faith or reckless acts of the Commonwealth.” Commonwealth v. Williams, 475 Mass. 705, 723 (2016). “In such a case, the judge may infer properly the exculpatory nature of the destroyed evidence, in essence shifting to the Commonwealth the burden to show that the lost or destroyed evidence was not exculpatory.” Sanford, 460 Mass. at 447.
 
--------------------------------------------
 
[6] The Court reaches the same conclusion even if it were to assume that NMS Labs used a testing methodology on the Samples that would allow retesting to be performed. See n.4, supra.
 
                                                            -6-
 
            The Commonwealth’s conduct here was neither reckless nor done in bad faith. While the parties have not provided, and the Court has not found, a definition or example of reckless conduct in the context at issue, generally speaking, under our criminal law, “‘[a] person acts recklessly when he consciously ignores, or is indifferent to, the probable outcome of his actions. . . . [or] if he . . . knew, or must have known, that such actions would create a substantial and unjustifiable risk . . . ’” Commonwealth v . St. Martin, 105 Mass. App. Ct. 71, 73 n.4 (2024) (citation omitted).
            Here, members of the prosecution team were arguably negligent in failing to have a system in place to ensure that the leftover Samples would be retained by NMS Labs or retrieved by the MSP. However, this conduct does not amount to recklessness given that the Commonwealth was aware at all times that it remained in possession of more than a sufficient amount of the orange liquid that was found in each of the containers taken from Ms. Church’s home, which can be tested for the presence of ethylene glycol and other substances.
IV.       MS. CHURCH IS NOT ENTITLED TO EXCLUSION OF THE TESTING RESULTS UNDER RULE 14
            Lastly, Ms. Church argues that she is entitled to exclusion of the NMS Labs’ testing results under Mass. R. Crim. P. 14(c) (eff. until February 28, 2025) because the Commonwealth failed to promptly notify her of the destruction. See Mass. R. Crim. P. 14(a)(2)(D) (eff. March 1, 2024) (“the prosecutor has a duty to promptly notify the defense of the destruction [of evidence]”).
            “[There] are two principles that . . . govern the sanctions provisions of rule 14. First, sanctions are remedial in nature. Second, sanctions should be tailored 
 
                                                            -7-
 
appropriately to cure any prejudice resulting from a party’s noncompliance and to ensure a fair trial.” Commonwealth v. Carney, 458 Mass. 418, 427 (2010).
            Here, the prejudice to Ms. Church is minimal given that orange liquid from the three containers collected at Ms. Church’s home is available for testing and, accordingly, the Commonwealth’s negligence does not warrant exclusion of NMS Labs’ testing results.
            Nevertheless, “even where the government’s level of culpability is no greater than negligence [like here], the defendant may still be entitled at trial to make an argument that focuses on such negligence -- such as, for example, that the negligence reflects an inadequate or incompetent investigation by the government that may give rise to a reasonable doubt as to the defendant’s guilt.” Williams, 455 Mass. at 718. However, the decision to allow Ms. Church to raise a Bowden defense should be left to the trial judge.[7]
ORDER
            For the above reasons, it is HEREBY ORDERED that Defendant’s Motion To
Suppress Or Exclude Testimony And Evidence Based On Destroyed Evidence (Paper
No. 49) is DENIED.
@/s/Jeffrey T. Karp
Associate Justice, Superior Court
@March 14, 2025
 
--------------------------------------------
 
[7] “A Bowden defense is an argument that the police failed adequately to investigate a crime, so as to raise a reasonable doubt with respect the defendant's guilt.” Commonwealth v. Trotto, 487 Mass. 708, 722 n.6 (2021) (citations omitted).